

**STEVEN A. METCALF II, ESQ**., *Founding Partner*\*\*\*
**NANETTE IDA METCALF, ESQ**., *Founder and Managing Attorney*\*\*
**CHRISTOPHER DARDEN, ESQ**., *Special Counsel*\*

*\*State of California Only*
*\*\*Licensed in New York and California*
*\*\*\*Licensed in New York, SDNY, EDNY, WDNY, EDMI, DCDC,*
*Second Circuit Court of Appeals and Court of Appeals for District of Columbia*

<u>**VIA ECF**</u>                                                            October 31, 2025

The Honorable Margaret M. Garnett
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:    ***United States v. Changli Luo, a/k/a Sophia Luo*, 25 Cr. 412 (MMG)**
<u>**Defendant's Opposition to Government's Motion for Protective Order**</u>

Dear Judge Garnett:

We respectfully oppose the Government's motion for a protective order. The basis of this response is because the proposed order lacks good cause under Federal Rule of Criminal Procedure 16(d)(1), violates Ms. Luo's constitutional rights, and appears designed to conceal government misconduct rather than serve legitimate law enforcement interests. The overly broad application this protective order serves is wholly irrelevant, and rather serves to protect complainants' reputation rather then serving a necessary legitimate interest. Overall, the proposed protective order raising grave questions about whether this prosecution was initiated to serve private interests rather than justice.

## I.    <u>THE GOVERNMENT FAILS TO ESTABLISH GOOD CAUSE</u>

The Second Circuit requires "particularized, on-the-record findings" of harm to justify protective orders, not mere assertions of sensitivity or privacy. *United States v. Amodeo*, 71 F.3d 1044, 1048–50 (2d Cir. 1995). The Government has provided no such evidence here. There are no affidavits documenting threats to Complainant's safety, no evidence of witness intimidation, and no showing that disclosure would compromise ongoing investigations. Instead, the Government offers only conclusory statements that materials are "particularly sensitive" and affect Complaint's "privacy and business interests."

This District has consistently rejected such generalized justifications. In *United States v. Parnas*, No. 19-cr-725 (JPO), the court modified a protective order where restrictions exceeded demonstrated needs. Similarly, in *United States v. Bankman-Fried*, No. 22-cr-673 (LAK), 2023 WL 4194773, at \*5 (S.D.N.Y. June 15, 2023), the court narrowed an overbroad order to allow defense investigation. Here, the circumstances demand outright denial of the protective order.

**Metcalf & Metcalf, P.C.**

99 Park Avenue, Suite 810
New York, NY 10016
646.253.0514 (*Phone*)
646.219.2012 (*Fax*)

Page 1  Metcalf & Metcalf, P.C.

As highlighted, Complainant is a billionaire with access to private security, vast legal resources, and political connections. The suggestion that he requires judicial protection from Ms. Luo is not credible absent specific evidence, which the Government conspicuously fails to provide. Moreover, as a public figure, Complainant has diminished privacy expectations, particularly concerning matters bearing on his conduct and character. See *SEC v. TheStreet.com,* 273 F.3d 222, 232 (2d Cir. 2001).

## II.     THE FBI DELIBERATELY EXCEEDED THE SEARCH WARRANT'S SCOPE

The timeline of this case is telling in determining the necessary for a protective order. First, the FBI seized materials during a search of Ms. Luo's residence on May 28, 2025, that was far beyond the scope of the search warrant, obtaining Ms. Luo's privileged attorney-client communications, personal and medical documents, and evidence of settlement negotiations between the parties. These are precisely the materials most valuable to Complainant in defending against Ms. Luo's civil claims, or her own allegations.

When FBI agents executed the search warrant at Ms. Luo's residence on May 28, 2025, the warrant explicitly authorized seizure of "electronic devices and media." However, agents deliberately exceeded this scope by seizing all of Ms. Luo's legal documents, including privileged attorney-client communications, whistleblower complaints detailing Complainant's corruption, evidence of settlement negotiations, and documents supporting Ms. Luo's claims against Complaint. The Government has refused to return these unlawfully seized materials despite their seizure beyond the warrant's scope and their privileged nature. To make matters worse, these items which were unlawfully seized are now in the presence of the Government and will be disclosed as part of its discovery disclosure. That would prevent the defendant from publicly commenting on these items. Had the items not been seized, the defendant would have been able to make public comments.

This conduct constitutes "obvious deliberate overreaching by the government in an effort to seize data as to which it lacked probable cause." *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc). The Second Circuit has similarly held that search warrants must describe "with particularity the place to be searched and the persons or things to be seized," and that warrants lacking such particularity violate core Fourth Amendment protections by functioning as unconstitutional general warrants. *United States v. Galpin,* 720 F.3d 436, 445–46 (2d Cir. 2013). A warrant that authorizes seizure of "electronic devices and media" does not authorize seizure of paper legal documents, privileged attorney-client communications, or whistleblower materials. The FBI's seizure of such materials exceeded the warrant's scope and violated the Fourth Amendment's particularity requirement.

This Court's decision in *United States v. Wey,* 252 F. Supp. 3d 237, 266–72 (S.D.N.Y. 2017), is directly on point. In *Wey*, Judge Nathan granted a motion to suppress where FBI agents executed search warrants at a defendant's business and residence, seizing materials far beyond the warrant's scope, including "pharmaceutical prescriptions, X-rays of family members, recreational sports schedules, divorce papers, and photographs of rural landscapes." *Id.* at 257. Judge Nathan found the warrants facially deficient because they failed to provide "any linkage to the suspected criminal activity, or indeed any meaningful content-based parameter or other limiting principle." *Id.* at 266. The court held that the warrants were unconstitutional general warrants and that the officers' conduct reflected "gross negligence or recklessness" rather than good faith. *Id.* at 272.

Here, the FBI's conduct was even more egregious than in *Wey*. The agents seized privileged attorney-client materials and medical documents that had no connection whatsoever to "electronic

**Metcalf & Metcalf, P.C.**

99 Park Avenue, Suite 810
New York, NY 10016
646.253.0514 (*Phone*)
646.219.2012 (*Fax*)

devices and media." This seizure was not inadvertent but deliberate, as evidenced by agents' systematic collection of all legal files and documents. The timing and nature of the seizure strongly suggest that the warrant was sought pretextually to obtain materials valuable to Complaint in defending against Ms. Luo's civil claims and to suppress her allegations – which pre-date this case.

When the government seizes privileged materials pursuant to a search warrant, strict procedural safeguards must be observed to protect the attorney-client privilege and work product doctrine. *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 172–73 (4th Cir. 2019). Courts have long recognized that "the attorney-client privilege is clearly applicable in the search warrant context," and that seizure of privileged materials requires special procedures to protect the privilege. In re Search of 636 S. 66th Terrace, 835 F. Supp. 1304, 1306 (D. Kan. 1993); *see also United States v. Marshank*, 777 F. Supp. 1507, 1521–22 (N.D. Cal. 1991) (discussing remedies for improper seizure of privileged materials). Here, no such safeguards were employed. The FBI simply seized all of Ms. Luo's legal documents without any filter team, any privilege review, or any procedures to protect confidential communications with her attorneys.

The Second Circuit has emphasized that "absent exigent circumstances, a warrantless entry to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within." *Payton v. New York*, 445 U.S. 573, 587–88 (1980). By extension, a warranted entry that deliberately exceeds the scope of judicial authorization is equally unconstitutional. The FBI's seizure here violated the Fourth Amendment's particularity requirement, exceeded the warrant's explicit limitations, and invaded privileged attorney-client communications without any procedural protections.

III.   **THE PROTECTIVE ORDER SEEKS TO CONCEAL POWERFUL EXCULPATORY EVIDENCE**

The Government's motion fails to disclose critical exculpatory evidence: Complainant entered into a written settlement agreement to pay Ms. Luo $ 8,000,000.00 (Eight Million Dollars) in damages, of which one million has already been transferred from his personal accounts. This payment occurred before Ms. Luo was arrested and charged, demonstrating that Complainant voluntarily acknowledged liability and agreed to compensate Ms. Luo for harm he caused her.

This settlement agreement constitutes powerful *Brady* material. It directly contradicts the Government's characterization of Ms. Luo as an extortionist by showing that Complaint voluntarily agreed to pay substantial sums, belying any claim of unlawful coercion. It demonstrates that communications between the parties were part of legitimate settlement negotiations, not criminal extortion. And it provides devastating impeachment evidence regarding Complaint's credibility and motives. The Government's failure to disclose this evidence, combined with its effort to prevent Ms. Luo from doing so, violates *Brady v. Maryland,* 373 U.S. 83 (1963), and *United States v. Coppa,* 267 F.3d 132, 145 (2d Cir. 2001).

IV.   **THE ORDER VIOLATES MS. LUO'S CONSTITUTIONAL RIGHTS**

The proposed order functions as a prior restraint on speech, prohibiting disclosure "to the media" and posting materials online. The Supreme Court has held that prior restraints are "the most serious and least tolerable infringements on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Before imposing such restraints, a court must find a "substantial probability of prejudice" to the proceedings and determine that no less restrictive alternatives exist. The Government has made neither showing. It does not claim pretrial publicity would prevent finding an impartial jury or that Ms.

**Metcalf & Metcalf, P.C.**

99 Park Avenue, Suite 810
New York, NY 10016
646.253.0514 (*Phone*)
646.219.2012 (*Fax*)

Page 3  Metcalf & Metcalf, P.C.

Luo's statements would taint witnesses. Instead, it seeks to prevent embarrassment to Complaint, which does not justify speech restrictions. *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987).

Ms. Luo has a particularly compelling interest in speaking publicly. She faces serious charges that could result in substantial imprisonment. Her reputation has been destroyed. She confronts the combined power of the federal government and a billionaire complainant. The First Amendment has "its fullest and most urgent application" to speech during criminal proceedings, where the defendant's liberty and reputation are at stake. *United States v. Trump,* 88 F.4th 990, 1004 (D.C. Cir. 2023).

The order also violates the Sixth Amendment by preventing Ms. Luo from locating witnesses who might corroborate her account and from investigating exculpatory evidence. Potential witnesses cannot come forward if they do not know the Complaint is the complainant. By concealing his identity and the settlement agreement, the order hampers Ms. Luo's ability to mount an effective defense, violating her confrontation rights and due process. *Crawford v. Washington,* 541 U.S. 36, 61 (2004); *United States v. Coppa,* 267 F.3d 132, 145 (2d Cir. 2001).

## V.    THE CIRCUMSTANCES SUGGEST PROSECUTORIAL VINDICTIVENESS

Federal law prohibits retaliation against whistleblowers who provide information to law enforcement. 18 U.S.C. § 1513(e). The DOJ Justice Manual requires prosecutors to consider whether charges may chill legitimate whistleblowing activity. Justice Manual § 9-5.001. Yet the timing here is stark: Ms. Luo exercised her whistleblower rights by filing detailed complaints against Complaint documenting corruption and misconduct – upon information and belief. She pursued legitimate civil claims and refused to remain silent despite pressure. Again, upon further information and belief, the FBI then seized her whistleblower documents along with privileged legal materials, and charges followed shortly thereafter.

Due process prohibits prosecutors from bringing charges in retaliation for a defendant's exercise of legal rights. *United States v. Goodwin,* 457 U.S. at 372–74. The circumstances here create a reasonable inference of retaliatory prosecution: Ms. Luo filed whistleblower complaints, Complaint paid her $1 million of an $8 million settlement but then defaulted on the remainder, and prosecution followed when she refused to abandon her claims. The protective order appears designed to prevent disclosure of facts supporting this inference.

## VI.    COMPLAINT CANNOT CLAIM VICTIM STATUS TO JUSTIFY PRIVACY PROTECTIONS

While the Government does not explicitly invoke the Crime Victims' Rights Act, 18 U.S.C. § 3771, its arguments regarding "Victim-1's" privacy interests and alleged safety concerns implicitly rely on victim-protection rationales typically associated with that statute. The Government characterizes Complainant as a victim deserving of anonymity and special protection from disclosure. However, this characterization is fundamentally undermined by Complainant's own conduct and acknowledgments.

Complainant entered into a written settlement agreement to pay Ms. Luo damages, of which one payment was already made – and the second one remains in overdue. This voluntary payment occurred before Ms. Luo was arrested and charged, demonstrating that Complainant paid Ms. Luo before believing he was a victim. A genuine victim of criminal extortion does not voluntarily execute settlement agreements paying millions of dollars to his alleged extortionist.

Moreover, the Government provides no particularized evidence supporting its conclusory assertions about safety concerns or harassment. The Government claims that "the defendant has made

**Metcalf & Metcalf, P.C.**

99 Park Avenue, Suite 810
New York, NY 10016
646.253.0514 (*Phone*)
646.219.2012 (*Fax*)

efforts to research and find, and sometimes contact and harass, individuals linked to this case, including multiple of Victim-1's relatives and Victim-1's family," but provides no affidavits, no documentation of specific threats, no police reports, and no credible evidence whatsoever to substantiate these serious allegations. Even in cases involving individuals who genuinely qualify for victim protections, this District requires particularized evidence and specific findings before granting such protections. In *United States v. Maxwell*, No. 20-cr-330 (AJN), the court granted pseudonyms for sex-trafficking victims only after the Government made detailed showings of threats and extraordinary media scrutiny. Here, the Government has made no comparable showing and cannot do so because Complaint is not a victim but a perpetrator who acknowledged his wrongdoing through the settlement agreement.

The Government's reliance on generalized privacy interests and unsupported safety allegations cannot overcome the powerful exculpatory evidence of the settlement agreement or the constitutional requirements of particularized findings under Amodeo. Complaint's status as a billionaire with vast resources and private security further undermines any claim that he requires judicial protection from Ms. Luo. The protective order appears designed not to protect a vulnerable victim but to shield a powerful individual from public accountability and to prevent disclosure of evidence demonstrating the pretextual nature of this prosecution.

## VII. THE PUBLIC INTEREST DEMANDS TRANSPARENCY

The public has a compelling interest in transparency where evidence suggests government misconduct and undue influence by a powerful private individual. The presumption of public access is particularly strong where materials involve potential prosecutorial impropriety. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Here, the FBI's unlawful seizure of privileged materials and whistleblower documents, the settlement agreement demonstrating Ms. Luo was first the victim, and the retaliatory timing of this prosecution all warrant the strongest presumption of access.

At a time when public confidence in federal law enforcement institutions is fragile, this Court should not permit a protective order to conceal prosecutorial conflicts of interest and potential misconduct. The proposed order would deny the public information necessary to evaluate whether prosecutorial decisions are influenced by the wealth and political connections of complainants, and whether the federal criminal justice system applies equally regardless of status.

## VII. CONCLUSION

The totality of circumstances demonstrates that this protective order serves private interests rather than legitimate law enforcement needs. The FBI's deliberate overreach in seizing materials beyond the warrant's scope, Ms. Luo being the victim first, the seizure of Ms. Luo's whistleblower complaints, and the absence of any particularized evidence justifying restrictions all compel denial of the Government's motion.

We respectfully request that the Court deny the motion in its entirety. In the alternative, we request that the Court hear the parties on a narrow application of the Protective order – one concerning the initiation and motivation for this prosecution, and impose only narrowly tailored restrictions based on particularized findings of genuine need or concern.

The integrity of the federal criminal justice system depends on transparency and accountability. The proposed protective order would undermine these fundamental principles and should be rejected.

**Metcalf & Metcalf, P.C.**

99 Park Avenue, Suite 810
New York, NY 10016
646.253.0514 (*Phone*)
646.219.2012 (*Fax*)

Page 5 Metcalf & Metcalf, P.C.

Thank you for your consideration.

Respectfully submitted,

*Steven A. Metcalf, II*

—————————————————————

Steven A. Metcalf, Esq
*Attorney for Ms. Luo*

**Metcalf & Metcalf, P.C.**
99 Park Avenue, Suite 810
New York, NY 10016
646.253.0514 (*Phone*)
646.219.2012 (*Fax*)