UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                        :

UNITED STATES OF AMERICA      :

                                         :

           - *v.* -           :             25 Cr. 412 (MMG)

                                         :

SOPHIA LUO,               :

                                         :

             Defendant.      :

                                         :

------------------------------------------------------- x

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA OPPOSING THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT AND FOR A BILL OF PARTICULARS

 

 

JAY CLAYTON
United States Attorney
Southern District of New York

Ni Qian
Brandon C. Thompson
Assistant United States Attorneys
- Of Counsel -

**TABLE OF CONTENTS**

I.   **STATEMENT OF FACTS**.................................................................................. 8

    A.   Procedural History .......................................................................... 8

    B.   Overview of the Charged Offenses................................................. 8

       i.   Luo's Scheme to Blackmail, Extort, and Defraud Victim-1 ...................................... 8

       ii.   The Execution of the Search Warrant for the Luo Residence and Luo's Person ...... 11

       iii.   Luo's Electronic Devices Contained Edited Pornographic Videos and Images Purportedly Depicting Victim-1 ................................................................. 12

II.   **APPLICABLE LAW** ................................................................................ 13

    A.   Applicable Law............................................................................... 13

       i.   Indictment Pleading Requirements ............................................. 13

       ii.   Bill of Particulars......................................................................... 15

III.   **ARGUMENT** ........................................................................................... 16

    A.   Discussion ....................................................................................... 16

       i.   The Indictment Is Sufficiently Specific...................................... 17

       ii.   The Defendant's Sufficiency and Vagueness Arguments Are Incorrect and Premature.................................................... 20

          a.   The Wire Fraud, Hobbs Act Extortion, and Blackmail Counts Are Sufficiently Pled ....................................... 20

          b.    The Defendant's Vagueness Arguments Are Premature....................................... 23

       iii.   The Defendant's Selective Prosecution Argument Fails........................................... 27

       iv.   A Bill of Particulars Is Unwarranted........................................ 28

IV.   **CONCLUSION** ....................................................................................... 33

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barber v. Thomas*,
  560 U.S. 474 (2010)............................................................................................................ 26
*Hamling v. United States*,
  418 U.S. 87 (1974).......................................................................................................... 13, 14
*Jones v. United States*,
  526 U.S. 227 (1999)........................................................................................................... 13
*Kasten v. Saint-Gobain Performance Plastics Corp.*,
  563 U.S. 1 (2011)............................................................................................................... 26
*Liparota v. United States*,
  471 U.S. 419 (1985)........................................................................................................... 26
*United States v. Abrams*,
  539 F. Supp. 378 (S.D.N.Y. 1982) ................................................................................... 14
*United States v. Adams*,
  760 F.Supp.3d 6 (S.D.N.Y., 2024) ................................................................................... 22
*United States v. Akhavan*,
  No. (S3) 20-CR-188 (JSR), 2020 WL 2555333 (S.D.N.Y. May 20, 2020)...................... 31
*United States v. Albertson*,
  971 F.Supp. 837 ................................................................................................................. 23
*United States v. Alfonso*,
  143 F.3d 772 (2d Cir. 1998).............................................................................................. 24
*United States v. Almaleh,*
  No. 17-CR-25 (ER), 2022 WL 602069 (S.D.N.Y. Feb. 28, 2022) .................................. 16
*United States v. Armstrong*,
  517 U.S. 456 (1996)...................................................................................................... 27, 28
*United States v. Avenatti,*
  No. (S1) 19-CR-373 (PGG), 2020 WL 70951 (S.D.N.Y. Jan. 6, 2020) ........................... 22
*United States v. Avenatti*,
  432 F.Supp.3d 354 (S.D.N.Y., 2020)............................................................................... 24
*United States v. Bankman-Fried*,
  680 F.Supp.3d 289 (S.D.N.Y., 2023)............................................................................... 21
*United States v. Barnes*,
  158 F.3d 662 (2d Cir. 1998).............................................................................................. 28
*United States v. Bellomo*,
  263 F. Supp. 2d 561 (S.D.N.Y. 2003)............................................................................... 29
*United States v. Bin Laden*,
  92 F. Supp. 2d 225 (S.D.N.Y. 2000)................................................................................. 29
*United States v. Bortnovsky*,
  820 F.2d 572 (2d Cir. 1987)...................................................................................... 15, 31, 32
*United States v. Chalmers*,
  410 F. Supp. 2d 278 (S.D.N.Y. 2006).............................................................................. 16

*United States v. Chocron*,
  No. 20-CR-400 (JSR), 2021 WL 3005086 (S.D.N.Y., July 14, 2021) .............................. 15, 20
*United States v. Cohen*,
  No. 23-CR-134 (VSB), 2025 WL 3687502 (S.D.N.Y., Dec. 19, 2025) ............................ 21, 22
*United States v. Davis*,
  588 U.S. 445 (2019) .......................................................................................................... 26
*United States v. Dawkins*,
  999 F.3d 767 (2d Cir. 2021) .............................................................................................. 23
*United States v. De La Pava*,
  268 F.3d 157 (2d Cir. 2001) .............................................................................................. 14
*United States v. Diaz*,
  303 F. Supp. 2d 84 (D. Conn. 2004) ................................................................................. 29
*United States v. Ephron*,
  No. 24-CR-418 (MMG), 2025 WL 524027 (S.D.N.Y. Feb. 18, 2025) ............................ 27, 28
*United States v. Fares*,
  978 F.2d 52 (2d Cir. 1992) ............................................................................................ 27, 28
*United States v. Fishbein*,
  No. 21-CR-296 (PAC), 2022 WL 1188424 (S.D.N.Y., Apr. 21, 2022) ............................ 15, 20
*United States. v. Ghannam*,
  No. 04-CR-1177 (DAB), 2005 WL 743066 (S.D.N.Y., Mar. 29, 2005) ............................. 20
*United States v. Guan*,
  No. 24-CR-322 (VM), 2026 WL 160995 (S.D.N.Y., Jan. 21, 2026) ..................................... 31
*United States v. Hanna*,
  198 F.Supp. 2d 236 (E.D.N.Y. 2002) ................................................................................... 31
*United States v. Jabali*,
  No. 01-CR-801 (SJ), 2003 WL 22170595 (E.D.N.Y., Sept. 12, 2003) .................................. 32
*United States v. Kogan*,
  283 F. Supp. 3d 127 (2d Cir. 2017) ................................................................................ 16, 29
*United States v. Kostin*,
  No. 24-CR-91 (GHW), 2025 WL 1504409 (S.D.N.Y. May 27, 2025) ................................... 32
*United States v. Lanier*,
  520 U.S. 259 (1997) ............................................................................................................ 26
*United States v. MacKenzie*,
  777 F.2d 811 (2d Cir. 1985) ................................................................................................ 25
*United States v. Mandell*,
  710 F. Supp. 2d 368 (S.D.N.Y. 2010) ....................................................................... 16, 28, 30
*United States v. McElroy*,
  910 F.2d 1016 (2d Cir. 1990) .............................................................................................. 25
*United States v. Milani*,
  739 F. Supp. 216 (S.D.N.Y. 1990) ...................................................................................... 24
*United States v. Panza*,
  750 F.2d 1141 (2d Cir. 1984) .............................................................................................. 31
*United States v. Phillips*,
  690 F. Supp. 3d 268 (S.D.N.Y. Sept. 1, 2023) ..................................................................... 7
*United States v. Pirro*,
  212 F.3d 86 (2d Cir. 2000) ............................................................................................. 13, 18

4

*United States v. Post*,
No. 08-CR-243 (KMK), 2013 WL 2934229 (S.D.N.Y. June 3, 2013).................................... 14
*United States v. Rajaratnam*,
No. 09-CR-1184 (RJH), 2010 WL 2788168 (S.D.N.Y. July 13, 2010) ................................. 31
*United States v. Raniere*,
384 F.Supp.3d 282 (E.D.N.Y. 2019) ..................................................................................... 24
*United States v. Reinhold*,
994 F.Supp. 194 (S.D.N.Y.,1998) .......................................................................................... 32
*United States v. Rigas*,
258 F.Supp.2d 299 (S.D.N.Y., 2003)...................................................................................... 30
*United States v. Rigas*,
490 F.3d 208 (2d Cir. 2007)........................................................................................... 14, 20
*United States v. Roberts*,
363 F.3d 118 (2d Cir. 2004).................................................................................................... 25
*United States v. Rogas*,
547 F.Supp. 3d 357 (S.D.N.Y. 2021)...................................................................................... 30
*United States v. Rybicki*,
354 F.3d 124 (2d Cir. 2003).................................................................................................... 25
*United States v. Shvartsman*,
722 F.Supp.3d 276 (S.D.N.Y., 2024)...................................................................................... 23
*United States v. Sikkema*,
No. 24-CR-227 (ER), 2024 WL 5077714 (S.D.N.Y., Dec. 11, 2024)..................................... 19
*United States v. Stavroulakis*,
952 F.2d 686 (2d Cir. 1992).................................................................................................... 15
*United States v. Strauss*,
999 F.2d 692 (2d Cir. 1993).................................................................................................... 25
*United States v. Stringer*,
730 F.3d 120 (2d Cir. 2013)........................................................................................... 14, 15
*United States v. Terry*,
No. 24-CR-427 (LGS), 2026 WL 458567 (S.D.N.Y.  Feb. 18, 2026)..................................... 21
*United States v. Thompson*,
No. 13-CR-378 (AJN), 2013 WL 6246489 (S.D.N.Y. Dec. 3, 2013) ..................................... 14
*United States v. Torres*,
901 F.2d 205 (2d Cir. 1990)........................................................................................... 16, 29
*United States v. Venturella*,
391 F.3d 120 (2d Cir. 2004).................................................................................................... 26
*United States v. Vilar*,
729 F.3d 62 (2d Cir. 2013)............................................................................................. 14, 18
*United States v. Walsh*,
156 F.Supp.3d 374 (E.D.N.Y., 2016) ..................................................................................... 32
*United States v. Walsh*,
194 F.3d 37, 44 (2d Cir. 1999)......................................................................................... passim
*United States v. Walters*,
910 F.3d 11 (2d Cir. 2018)...................................................................................................... 15
*United States v. Washington*,
No. 21-CR-603 (VEC), 2024 WL 3014095 (S.D.N.Y., June 14, 2024)................................. 18

*United States v. Weiser,*
   No. 23-CR-514 (VSB), 2025 WL 2662273 (S.D.N.Y., Sept. 16, 2025) ................................. 24
*United States v. Williams,*
   701 F.Supp.3d 257 (S.D.N.Y., 2023)........................................................................... 7, 28
*United States v. Yannotti,*
   541 F.3d 112 (2d Cir. 2008).................................................................. 14, 15, 18, 22
*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
   455 U.S. 489 (1982).................................................................................................. 25

**Statutes**

18 U.S.C. §§ 1349................................................................................................... 21
Title 18, United States Code, Sections 201 and 666................................................... 18
United States Code Sections 873 ................................................................................ 8

**Rules**

Federal Rule of Criminal Procedure 7 ......................................................................... 13

The Government respectfully submits this memorandum of law in opposition to defendant Sophia Luo's motion to dismiss the indictment (the "Indictment") and, in the alternative, for a bill of particulars (the "Motion"). The defendant argues that the Court must dismiss the Indictment for three primary reasons, all of which fail. First, the defendant claims that the Government has not sufficiently pleaded particular elements of Counts One, Two, and Three. To the contrary, the Indictment, which sets forth the when, where, what, and how for each of count, is more than sufficient to "inform the defendant of the charges [s]he must meet and with enough detail that [s]he may plead double jeopardy in a future prosecution based on the same set of events." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999). That is all that is required under Rule 7(c) of the Federal Rules of Criminal Procedure and by the Fifth and Sixth Amendments. Second, the defendant argues that Counts One and Two are impermissibly and unconstitutionally vague as applied. However, "vagueness challenges are not appropriately addressed at the motion to dismiss stage, as the court needs a fully developed factual record from trial to determine whether the defendant had a fair warning that their conduct was prohibited by law." *United States v. Phillips*, 690 F. Supp. 3d 268, 292-93 (S.D.N.Y. Sept. 1, 2023). Finally, the defendant argues that the Indictment reflects an unconstitutional, selective prosecution that violates the defendant's Due Process rights. This argument fails because the defendant can satisfy neither the discriminatory effect nor the discriminatory purpose showings required for such a claim. *See United States v. Williams*, 701 F.Supp.3d 257, 265 (S.D.N.Y., 2023). In the alternative to dismissing the Indictment, the defendant moves for a bill of particulars. The Court should deny this request because the totality of the information available to the defendant adequately notifies her of the charges against her and the conduct at issue. For these reasons, and as explained in greater detail below, the Court should deny the Motion in its entirety.

## I.    STATEMENT OF FACTS

### A.  Procedural History

On or about June 14, 2025, the Honorable Sarah Netburn, U.S. Magistrate Judge for the Southern District of New York, authorized a complaint charging Luo with one count of destruction, alteration, or falsification of records in federal investigations, in violation of Title 18, United States Code, Section 1519, and one count of blackmail, in violation of Title 18, United States Code Sections 873 and 2 (the "Complaint").  On or about September 11, 2025, a grand jury sitting in this District returned the Indictment, which charged Luo with one count of wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2 ("Count One"), one count of Hobbs Act extortion, in violation of Title 18, United States Code, Sections 1951 and 2 ("Count Two"), one count of blackmail, in violation of Title 18, United States Code, Sections 873 and 2 ("Count Three"), and one count of destruction and concealment of records in federal investigation, in violation of Title 18, United States Code, Sections 1519 and 2 ("Count Four").  The defense filed the instant Motion, asking the Court to dismiss the Indictment, on February 20, 2026.

### B.  Overview of the Charged Offenses

#### i.    Luo's Scheme to Blackmail, Extort, and Defraud Victim-1

In or around November 2022, Victim-1 met Luo.  (Complaint ("Compl.") ¶ 3.a).  After a handful of in-person meetings, in or about June 2023, Luo and Victim-1 had an intimate sexual encounter (the "Sexual Encounter").  (Compl. ¶ 3.a).  In or about May 2024, Luo sent two letters to Victim-1 via iMessage, accusing Victim-1, among other things, of having "misled" Luo in order to have sex with her, and, in the alternative, having sex with Luo while she was mentally incapacitated or mentally disabled.  (Compl. ¶ 3.b).  Luo stated in these letters that her "home has cameras," and that "[e]verything [Victim-1] did was caught on camera," which Luo would expose to "mass media," if Victim-1 did not apologize.  (Compl. ¶ 3.b).  In the second letter, Luo stated

that "anyone, whoever they are, who violates" laws such as "sex crime," "bribery," and other crimes, "will eventually face judgment," and then provided Victim-1 with the information for a certified mediator.  (Compl. ¶ 3.b).

In or about June 2024, Victim-1 agreed to enter into mediation with Luo.  (Compl. ¶ 3.c). Though Victim-1 denies Luo's allegations, Victim-1 has indicated that Victim-1 believed that entering into mediation with Luo would avoid harassment of Victim-1's family and potential public embarrassment.  (Compl. ¶ 3.d).  In or about August 2024, Victim-1 entered into a settlement agreement with Luo, in which Victim-1 agreed to pay Luo a sum of money, and Victim-1 made an initial payment to Luo as agreed.  (Compl. ¶ 3.d).  Despite the settlement agreement Victim-1 and Luo had entered into, starting in or about November 2024, Luo demanded increasing amounts of money from Victim-1.  In or about January 2025, Luo, through the mediator, conveyed to Victim-1 a list of demands and threats.  (Compl. ¶ 3.e).  Luo, in substance and in part, demanded $1.215 billion dollars from Victim-1, or else she threatened she would, among other things, report criminal acts to "government offices," including a federal agency related to one of Victim-1's businesses.  (Compl. ¶ 3.e).

On or about April 1, 2025, an attorney representing Victim-1 communicated with an attorney then representing Luo ("Attorney-1") regarding Luo's demands.  The attorney representing Victim-1 then sent an email to Attorney-1 to confirm that its contents reflected what Luo directed Attorney-1 to communicate to Victim-1 through Victim-1's attorney (the "Victim-1 Attorney Email").  (Compl. ¶ 4.a).  The Victim-1 Attorney Email sought to confirm that Luo had directed Attorney-1 to convey the following, set forth here in substance and in part:

   i. Luo's monetary demand changed to $50 million dollars.

ii. If Victim-1 does not take "responsibility," Luo was determined to "destroy" Victim-1.

iii. Luo had multiple cameras in the apartment where the Sexual Encounter occurred and Luo had at least two videos and pictures of the Sexual Encounter, which she would provide to others absent a resolution.

iv. Further, absent resolution, Luo was prepared to report alleged criminal acts by Victim-1 to "criminal investigators," Victim-1's business partners and "the federal government." (Compl. ¶ 4.a.i-a.iv; Indictment ("Ind.") ¶¶ 2-3).

Later that same day, Attorney-1 confirmed the accuracy of what Attorney-1 had been authorized to convey to Victim-1's counsel by Luo, and noted that Luo had instructed Attorney-1 to convey this message to Victim-1 through counsel on March 29, 2025. (Compl. ¶ 4.b). Victim-1 did not pay the $50 million dollars demanded by Luo in the message conveyed by Attorney-1. (Compl. ¶ 5).

On or about April 5, 2025, someone with the name "Sophia L," and a particular Gmail email account (the "Luo Gmail Account"), using an Internet Protocol address which resolves to a location in Manhattan, New York, submitted an online tip regarding Victim-1 to the FBI, claiming that Victim-1 had committed bribery of government officials.[1] (Compl. ¶ 6).[2] The Google Pay account associated with the Luo Gmail account is subscribed to in the name of "Changli Luo."[3] (Compl. ¶ 7).

---

[1] The tip cited the sender's own claim that Victim-1 had admitted this conduct as its only basis.

[2] The defendant also submitted an email to the email address associated with the Department of Justice's Corporate Whistleblower program alleging criminal acts and wrongdoing on the part of Victim-1.

[3] Government documents and records, including Luo's United States passport and a certification of report of dissolution of marriage issued by the state of Florida, reflect that Luo's real name is Changli Luo.

### ii.   The Execution of the Search Warrant for the Luo Residence and Luo's Person

On or about May 27, 2025, the Honorable Robyn F. Tarnofsky, U.S. Magistrate Judge for the Southern District of New York, authorized search warrants to search the person of Changli Luo, a/k/a "Sophia Luo," the defendant, and the apartment (the "Luo Residence") in which she resides (the "Search Warrants"). (Compl. ¶ 9.a). On or about May 28, 2025, an FBI search team arrived at the Luo Residence at approximately 6:10 a.m. for the purpose of executing the Search Warrants. (Compl. ¶ 9.b).

Between approximately 6:17 a.m. and approximately 6:33 a.m., law enforcement officers attempted to contact Luo. (Compl. ¶ 9.c). More specifically, between approximately 6:17 a.m. and approximately 6:33 a.m., law enforcement officers placed 15 calls to a phone number subscribed in the name "Changli Luo." (the "Calls"). (Compl. ¶ 9.c.i-ii). At approximately 6:25 a.m., law enforcement officers knocked on the door to the Luo Residence and announced, "FBI, Search Warrant, [Unit Number of Luo Residence] come to the door". (Compl. ¶ 9.c.iii). At approximately 6:26 a.m., law enforcement officers sent the following text message to a phone number subscribed to in the name Changli Luo: "Hello, this is the FBI. It is very important that you call me back at this number" (the "Text"). (Compl. ¶ 9.c.iv).

Luo did not answer the Calls. (Compl. ¶ 9.d). Luo did not respond to the Text. (Compl. ¶ 9.e). Luo did not open the door to the Luo Residence. (Compl. ¶ 9.e). Two of Luo's neighbors, however, heard the commotion and opened the doors to their apartments. (Compl. ¶ 9.g). Approximately 20 minutes after their arrival, at approximately 6:38 a.m., law enforcement officers entered the Luo Residence using a key they obtained from the building staff. (Compl. ¶ 9.h). When the door to the Luo Residence was opened, Luo was in a robe in the hallway between the living room and the bedroom and was walking towards the door. (Compl. ¶ 9.i).

11

Pursuant to the warrant to search Luo's person, law enforcement officers searched Luo's person and recovered a rose gold iPhone (the "Rose Gold iPhone") from the pocket of her robe. (Compl. ¶ 9.k).  Later review of the Rose Gold iPhone revealed that not only had Luo received the Calls and Text, but also that Luo had placed two outgoing calls during the same time period, indicating that Luo was aware of the FBI's presence outside her door prior to their entering the Luo Residence.  Pursuant to the Search Warrants, law enforcement officers also searched the Luo Residence, which revealed evidence of Luo's attempt to conceal evidence.  After a thorough manual search of the Luo Residence, law enforcement officers found, among other items, an additional cellphone (the "Red Cellphone"), two computers, two voice recorders, two cameras, and seven electronic storage devices (Compl. ¶ 9.m.i-xi; Ind. ¶ 4).

Law enforcement officers located the Red Cellphone hidden in a laundry hamper in the bathroom layered between dirty clothes.  (Compl. ¶ 9.n).  After completing their manual search of the Luo Residence, out of an abundance of caution, law enforcement officers ran a law enforcement canine, which had received special training to detect electronic devices by smell (the "Canine"), through the Luo Residence.  (Compl. ¶ 9.o). The Canine alerted in front of a package of sanitary pads located in the bathroom of the Luo Residence.  (Compl. ¶ 9.p).  Upon examining the package of sanitary pads, law enforcement officers discovered hidden amongst the sanitary pads an additional iPhone with a purple case (the "Purple Cellphone") and two flash drives. (Compl. ¶ 9.q).  As discussed in more detail below, later review of the Purple Cellphone revealed that it contained pertinent evidence of the charged offenses.

### iii. Luo's Electronic Devices Contained Edited Pornographic Videos and Images Purportedly Depicting Victim-1

Law enforcement special agents reviewed the electronic devices seized during the search of the Luo Residence and Luo's person pursuant to the Search Warrants.  The review of the devices

12

revealed that the Purple Cellphone had several pornographic videos and still images that appear to have Victim-1's face grafted onto the body of another man, saved in the photo library. (Compl. ¶ 10.c.i). In addition, the Purple Cellphone had a video and image editing application installed on it. (Compl. ¶ 10.c.ii). The editing application contained what appeared to be the same pornographic video (the "Fake Pornographic Video") that was saved in the Purple Cellphone's photo library. (Compl. ¶ 10.c.ii). The Purple Cellphone has an encrypted messaging application called WeChat installed on the device. (Compl. ¶ 10.c.iii). In the WeChat application, there is a message exchange entitled "Sophia L" and the Chinese character for "self". (Compl. ¶ 10.c.i). On or about March 29, 2025, in this message exchange, the user of another device sends the Purple Cellphone what appear to be pornographic images. (Compl. ¶ 10.c.iii). Later that same day, the Purple Cellphone sends back in the same message exchange the same pornographic images, this time with Victim-1's face grafted on. (Compl. ¶ 10.c.iii). This day—March 29, 2025—was the same day that Luo instructed Attorney-1 to convey to Victim-1 that if he did not pay her $50 million dollars, she would distribute photos and videos of the Sexual Encounter and report criminal allegations to the federal government. (Compl. ¶ 10.c.iv). Then, on April 4, 2025, the Purple Cellphone sends the Fake Pornographic Video in the same message exchange. (Compl. ¶ 10.c.iii).

## II.   APPLICABLE LAW

### A. Applicable Law

#### i.   Indictment Pleading Requirements

"A criminal defendant is entitled to an indictment that states the essential elements of the charge against him." *United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000) (citing *Jones v. United States*, 526 U.S. 227, 232 (1999); *Hamling v. United States*, 418 U.S. 87, 117 (1974); Fed. R. Crim. P. 7(c)). "Pursuant to Federal Rule of Criminal Procedure 7, 'the indictment or information must

be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *United States v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013) (quoting Rule 7(c) (alterations omitted)). To satisfy this rule, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (internal quotation marks omitted). "The Indictment Clause of the Fifth Amendment 'requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury.'" *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (quoting *United States v. Abrams*, 539 F. Supp. 378, 384 (S.D.N.Y. 1982)). In other words, the indictment need only allege the "core of criminality" the Government intends to prove at trial, since the indictment is "read . . . to include facts which are necessarily implied by the specific allegations made." *United States v. Rigas*, 490 F.3d 208, 228-29 (2d Cir. 2007). Generally, "[a]n indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling*, 418 U.S. at 117); *Yannotti*, 541 F.3d at 127. "A defendant faces a 'high standard' in seeking to dismiss an indictment." *United States v. Thompson*, 13 Cr. 378 (AJN), 2013 WL 6246489, at *6 (S.D.N.Y., Dec. 3, 2013) (quoting *United States v. Post*, 08 Cr. 243 (KMK), 2013 WL 2934229, at *5 (S.D.N.Y., June 3, 2013)). The Second Circuit has recognized that dismissal of an indictment is an "extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (internal quotation marks omitted); *see also United States v.*

14

*Walters*, 910 F.3d 11, 26 (2d Cir. 2018) (dismissal of an indictment is a "drastic remedy that should be utilized with caution and only in extreme cases").

Even in cases involving very bare-bones allegations, courts will not dismiss the indictment absent a showing of prejudice. *Stringer*, 730 F.3d at 124. Where a defendant has been given sufficient notice of the charges against him by means of, for example, discovery materials, prejudice will not have been shown, and the indictment should stand. *See, e.g.*, *id.* at 124-25; *Yannotti*, 541 F.3d at 127; *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992). "When a defendant moves to dismiss an indictment, the allegations in the Complaint are relevant to assessing whether the defendant is on notice of the charges against him." *United States v. Chocron*, 20 Cr. 400 (JSR), 2021 WL 3005086, at *2 (S.D.N.Y., July 14, 2021) (citing *United States v. Walsh*, 194 F.3d. 37, 35 [sic] (2d Cir. 1999)); *see, e.g.*, *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013); *United States v. Fishbein*, 21 Cr. 296 (PAC), 2022 WL 1188424, at *3 (S.D.N.Y., Apr. 21, 2022) ("The Complaint is part of the record and may be used to gauge the specificity of the Indictment.").

### ii.    Bill of Particulars

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars where necessary to "prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam). "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *Walsh*, 194 F.3d at 47. "Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Bortnovsky*, 820 F.2d at 574.

"A bill of particulars is not a discovery device," *United States v. Mandell*, 710 F. Supp. 2d 368, 384 (S.D.N.Y. 2010), and the acquisition of evidentiary detail is not its function, *see United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990), *abrogated on other grounds by United States v. Marcus*, 628 F. 3d 36, 41–43 (2d Cir. 2010). "Accordingly, the proper inquiry on a motion to compel a bill of particulars is whether the information sought is necessary, not whether it is helpful." *United States v. Kogan*, 283 F. Supp. 3d 127, 132 (2d Cir. 2017); *accord United States v. Chalmers*, 410 F. Supp. 2d 278, 286 (S.D.N.Y. 2006) ("In determining whether to grant a bill of particulars, the question is not whether the information would be useful to the defense, but rather whether it is necessary.").

In determining whether the requested information is necessary to the defense, courts examine "the totality of the information available to the defendant," including "the indictment, affirmations, and general pre-trial discovery." *United States v. Almaleh*, 17 CR. 25 (ER), 2022 WL 602069, at *2 (S.D.N.Y., Feb. 28, 2022). Although the Government cannot "fulfill its obligations merely by providing mountains of documents to defense counsel, the mere existence of 'mountains of documents' does not entitle [the defendant] to a bill of particulars." *Mandell*, 710 F. Supp. 2d at 385. Rather, the question is whether the defendant has sufficient information to allow him "to differentiate the charges sufficiently and, therefore, present his defense adequately." *Walsh*, 194 F. 3d at 47.

## III.   ARGUMENT

### A. Discussion

The defendant argues that the Court must dismiss Counts One, Two, and Three because they are insufficiently pled or because the statutes are impermissible vague as applied. For the reasons set forth below, the Indictment sufficiently alleges each of these Counts by notifying the

defendant of the when, where, and how's of the alleged crimes. The defendants' arguments to the contrary amount to sufficiency of the evidence arguments that are inappropriate at the motion-to-dismiss stage. Additionally, the defendant's arguments that each of these statutes is impermissibly vague as applied to her conduct are also prematurely brought, before there is a record of the facts. The defendant also argues that Counts One, Two, Three, and Four should be dismissed for selective prosecution but fails to make a prima facie showing of either element necessary to assert such a defense. Finally, the defendant's motion for a bill of particulars as to Counts One, Two, Three, and Four should also be rejected in light of the detailed Complaint, the Indictment, and the discovery produced thus far, which make clear the specific acts underlying the charged offenses.

### i.    The Indictment Is Sufficiently Specific

The Indictment plainly provides sufficiently specific notice to the defendant of the essential elements of the offenses charged. With respect to Count One, the Indictment primarily tracks the statutory language of the wire fraud statute but further specifies that the offense occurred "from at least in or about November 2024 through at least in or about April 2025"—namely the period of time after Luo reached a settlement agreement but then nonetheless demanded additional money from Victim-1—and further alleges that Luo attempted "to defraud Victim-1 by making false statements to Victim-1 about [Luo's] possession of compromising materials and information about Victim-1," and "threaten[ing] to distribute [the compromising materials and information] publicly in order to obtain money from Victim-1." (Ind. ¶ 1). With respect to Count Two, the Indictment again primarily tracks the statutory language, specifies that the offense occurred "[f]rom in or about November 2024 to in or about April 2025, in the Southern District of New York and elsewhere," and further alleges that the defendant "attempted to induce Victim-1 to pay [the defendant] between tens of millions and over a billion dollars to which she was not entitled, by

17

threatening to report allegations of wrongdoing to Victim-1's investors, business partners, mass media, and others if Victim-1 did not pay," that is, referencing specific demands for certain amounts of money from the same specific victim.  (Ind. ¶ 2).  With respect to Count Three, the Indictment tracks the statutory language and further specifies a fairly narrow time period when the alleged offense occurred: "[f]rom on or about March 31, 2025 to on or about April 1, 2025 in the Southern District of New York and elsewhere."  (Ind. ¶ 3).  Count Three further specifies bribery, in violation of Title 18, United States Code, Sections 201 and 666, as the purported violation about which the defendant would not inform.  (Ind. ¶ 3).  With respect to Count Four, the Indictment tracks the statutory language and further alleges that the offense took place "[o]n or about May 28, 2025," the day law enforcement officers searched Luo and her residence.  (Ind. ¶ 4).  Count Four of the Indictment further alleges that the defendant "concealed multiple electronic devices, including one cellular phone and two flash drives, within a container of sanitary products and another cellular phone inside of a clothing hamper, and deleted from a cellular phone incriminating photographs and videos, after she became aware of the existence of an investigation involving her by the Federal Bureau of Investigation and the U.S. Attorney's Office for the Southern District of New York."  (Ind. ¶ 4).

The foregoing excerpts of the Indictment make clear that each count states "the essential elements of the charge against" the defendant, *Pirro*, 212 F.3d at 91, provides "a plain, concise, and definite written statement of the essential facts constituting the offense charged," *Vilar*, 729 F.3d at 80, and "state[s] the time and place of the alleged crime," *Yannotti*, 541 F.3d at 127.  The law requires nothing more of an indictment and the Court should deny the Motion on this basis. *See, e.g.*, *United States v. Washington*, 21 Cr. 603 (VEC), 2024 WL 3014095, at *1 (S.D.N.Y., June 14, 2024) (denying motion to dismiss indictment where the court concluded the indictment

was "certainly 'minimally sufficient' to allege" the charges at issue); *United States v. Sikkema*, 24 CR. 227 (ER), 2024 WL 5077714, at *4 (S.D.N.Y., Dec. 11, 2024) (denying motion to dismiss indictment because "the Government is only required to allege each element of the charged offense" and the court concluded that the Government had done so).

The Court should dismiss the Motion because the four corners of the Indictment in and of themselves satisfy Rule 7(c) of the Federal Rules of Criminal Procedure, comply with the Fifth and Sixth Amendments, and render the Indictment sufficient. Moreover, here, Luo also has the benefit of a Complaint laying out additional details of the allegations. The ten-page Complaint contains significant details regarding the defendant's conduct and puts the defendant on notice of the conduct underlying the charges against her.[4] For example, the Complaint describes the Sexual Encounter, recounts letters the defendant sent Victim-1 in which she represented that cameras in her home captured what she and Victim-1 did, that she had at least two videos and pictures of the Sexual Encounter, and that she would disseminate this material publicly. (Compl. ¶¶ 3-4). The Complaint also alleges that the defendant demanded, at various points, between $50 million and up to $1.215 billion dollars in exchange for her not reporting alleged criminal acts to the "criminal investigators," "Victim-1's business partners, and "the federal government." (Compl. ¶¶ 3-4). The Complaint further details an FBI complaint pertaining to Victim-1 submitted by an email address with subscriber information tied to the defendant, which has since been produced to the defendant in discovery. (Compl. ¶¶ 6-7). In addition, the Complaint describes that the defendant had the Fake Pornographic Video, images of Victim-1, pornographic images, and a composite of the two depicting Victim-1's face grafted onto pornographic images on the Purple Cellphone. (Compl. ¶ 10). The Complaint explains that the defendant sent and received messages containing

---

[4] While the Complaint alleges only two of the counts contained in the Indictment, the factual allegations contained in the Complaint pertain to all counts of the Indictment.

pornographic images and images of Victim-1 on the same day that she directed Attorney-1 to tell

Victim-1's lawyer that she would distribute photos and videos of the Sexual Encounter and report

criminal allegations to the federal government if Victim-1 did not pay $50 million.  (Compl. ¶ 10).

The Indictment, standing alone, is sufficient.  But because "[t]he Complaint is part of the

record and may be used to gauge the specificity of the Indictment," *Chocron*, 2021 WL 3005086,

at *2, there can be no serious question that the Indictment articulates the "core of criminality,"

*Rigas*, 490 F.3d at 228-29, and satisfies the requirements of Rule 7(c) as well as the Fifth and Sixth

Amendments.  *See also Fishbein*, 2022 WL 1188424, at *3; *United States. v. Ghannam*, 4 Cr. 1177

(DAB), 2005 WL 743066, at *2 (S.D.N.Y., Mar. 29, 2005) (considering allegations in a sealed

complaint as well as those in indictment to assess sufficiency of indictment).

### ii. The Defendant's Sufficiency and Vagueness Arguments Are Incorrect and Premature

#### a. The Wire Fraud, Hobbs Act Extortion, and Blackmail Counts Are Sufficiently Pled

First, the defendant argues that the Court must dismiss Counts One, Two, and Three

because these counts are insufficiently pled.  The defendant raises a litany of arguments, none of

which provides a basis to dismiss the charges in the Indictment.

The defendant contends that Count One is insufficiently pled because it "does not allege

that the defendant pursued a frivolous case or sought monetary damages for which she was not

entitled."  Mot. at 9.  That is not required to plead wire fraud.  Count One tracks the statutory

language of Title 18, United States Code, Section 1343 and specifies the defendant's scheme to

defraud, which is based on the defendant's lies and misrepresentations to obtain money.  The

defendant next contends that "the Indictment does not allege a single false statement or affirmative

representation made by, or on behalf of the defendant, as necessary to predicate the charge of wire

fraud."  Mot. at 9.  However, an indictment charging wire fraud need not specify the false

20

statements or misrepresentations. *United States v. Bankman-Fried*, 680 F.Supp.3d 289, 307 (S.D.N.Y., 2023) (denying motion to dismiss wire fraud and conspiracy to commit wire fraud counts because "[t]he charges track[ed] the statutory language of 18 U.S.C. §§ 1349 and 1343, respectively, and allege that the scheme sought 'to obtain[] money and property by means of false and fraudulent pretenses.'"). And even though the Indictment need not do so, it references certain of the defendant's misrepresentations. *See* Indictment ¶ 1.

The defendant next contends that the Court should dismiss Count One because the defendant's former attorney ("Attorney-1") is responsible for the statements and conduct that resulted in the defendant being charged. More specifically, the defendant claims that she "cannot be held responsible for . . . statements, whether true, false, or exaggerated, when made by the attorney and based on the attorney's strategy when negotiating in pursuit of the settlement, particularly, when the client [was] not even present for such statements." Mot. at 10. This argument, which hinges on the defense's proffered view of facts and the Government's proof, is improper at this stage.[5] *See, e.g.*, *United States v. Terry*, 24 Cr. 427 (LGS), 2026 WL 458567, at *4 (S.D.N.Y., Feb. 18, 2026) (denying motion to dismiss indictment where defendant's arguments sought "prematurely to challenge which inferences should be drawn from the alleged facts"); *see also, generally*, *United States v. Cohen*, 23 Cr. 134 (VSB), 2025 WL 3687502, at *3 (S.D.N.Y., Dec. 19, 2025) ("[T]he sufficiency of the evidence is not appropriately addressed on a pretrial

---

[5] Throughout the Motion, the defendant argues that she has been charged because of "demands and threats made by her lawyer," Mot. at 10-11, contends that the "primary basis for the instant charges stem from the reckless statements made by that lawyer," Mot. at 1, and claims that the defendant "certainly believed . . . advice from her counsel." Mot. at 7. The Motion suggests that the defendant intends to argue that she relied on her previous counsel's advice with respect to the conduct giving rise to the charges in the Indictment. Nevertheless, the defendant has not waived subject-matter privilege with respect to the conversations she had with Attorney-1 related to her claims and demands to Victim-1. The Government understands that the defendant is still asserting privilege over some of her communications with Attorney-1. To the extent that the defendant is relying on an advice of counsel defense or otherwise asserting a defense that goes to the communications she had or did not have with Attorney-1, the defendant cannot continue to assert privilege over those same communications, thereby using this argument as both a sword and a shield.

motion to dismiss an indictment.") (internal citation omitted); *United States v. Adams*, 760 F.Supp.3d 6, 25 (S.D.N.Y., 2024) (denying motion to dismiss indictment where defendant asserted that allegations in indictment failed to demonstrate corrupt intent to exert pressure because the arguments were "not about the sufficiency of the Indictment, but [went] to the weight of the evidence, which [was] not for th[e] Court to resolve at the motion to dismiss stage.")

The defendant contends that the Government has not sufficiently pled Count Two because it has not alleged "wrongfulness." More specifically, the defendant argues that the Court must dismiss Count Two "because the allegations, even if accepted as true, do not describe 'wrongful' conduct under the law," and that courts must determine "on a case-by-case basis whether particular conduct falls within" the conduct that the Hobbs Act proscribes. Mot. at 13. This argument fails. As an initial matter, Count Two is adequately pled because it tracks "the language of the statute charged and state[s] the time and place . . . of the alleged crime." *Yannotti*, 541 F.3d at 127. In addition, the defendant's argument is wrong as a matter of law. In extortion prosecutions, the issues of "wrongfulness" and whether the defendant had a claim of right are not questions of law that are appropriate to address at motion to dismiss; they are questions of fact that must be put to the jury. In *United States v. Avenatti*, the defendant moved to dismiss two counts of extortion because, he claimed, *inter alia*, that the conduct alleged in the indictment was not "wrongful." 2020 WL 70951, at *8 (S.D.N.Y., 2020). In denying the motion to dismiss, Judge Gardephe explained that "whether or not Avenatti engaged in [wrongful] conduct is, of course, a question for the jury. Similarly, whether or not Avenatti had 'a plausible claim of right,' and whether or not 'there is a nexus between [his alleged] threat[s] and that 'plausible claim of right,' are questions for the jury." *Id*. at *9. The primary case upon which the defendant relies to support its argument is consistent with *Avenatti*, and demonstrates the untimeliness of the defendant's motion. *See* Mot.

at 13 (citing *United States v. Albertson*, 971 F.Supp. 837, 842-43).  In *Albertson*, the question of whether the defendant, who had been charged with Hobbs Act extortion, had acted wrongfully, was left to the jury.  *Id.*

Finally, the defendant appears to argue that Count Three, charging blackmail, is insufficient because the defendant was engaged in a "routine and justifiable point of negotiation."  Mot. at 20. Similar to the defendant's arguments with respect to Count One, this argument challenges not the sufficiency of the Indictment, but, instead, the defendant's own view of the Government's anticipated evidence pertaining to Count Three.  However, "[t]he Second Circuit has explained that a motion to dismiss is not a vehicle to test the strength of the government's anticipated evidence . . . that is something [the courts] do after trial."  *United States v. Dawkins*, 999 F.3d 767, 780 (2d Cir. 2021).  Accordingly, the defendant's arguments regarding the sufficiency of the blackmail count fail.

### b.   The Defendant's Vagueness Arguments Are Premature

The defendant also asks the Court to dismiss Count One and Count Two—the wire fraud and Hobbs Act extortion charges—because they are, she argues, "vague-as-applied."  *See* Mot. at 11-12; 19-20.  The Court should reject these arguments for two reasons.  First, these arguments are premature.  Decisions by judges in district courts throughout the Second Circuit make clear that it is improper to resolve a vague-as-applied challenge at the motion-to-dismiss stage.  That is because resolving such a challenge requires a factual record that captures the defendant's conduct clearly.  *See, e.g.*, *United States v. Shvartsman*, 722 F.Supp.3d 276, 299 (S.D.N.Y., 2024) ("An implicit requirement of [the vagueness] test is that it must be clear what the defendant did . . . . Consequently, the Court requires full factual development at trial before it can determine whether the [relevant] statutes failed to provide Defendant fair warning that his conduct was prohibited by law, as required by the Due Process Clause.") (internal citations omitted) (alterations in original);

23

*see also, e.g.*, *United States v. Avenatti*, 432 F.Supp.3d 354, 366 (S.D.N.Y., 2020) (denying defendant's pre-trial motion to dismiss certain counts that were allegedly vague-as-applied because the motion was "premature"); *United States v. Milani*, 739 F. Supp. 216, 217 (S.D.N.Y. 1990) ("In the absence of a plenary trial record this Court is unable to rule on whether the statute is impermissibly vague as applied to defendant."). The defendant acknowledges this precedent. *See* Mot. at 11 ("The resolution of a defendant's void for vagueness challenge ordinarily requires 'a more expansive factual record to be developed at trial.'") (quoting *Milani*, 739 F.Supp. at 218). Nevertheless, she claims that, in this case, "the Court need not wait until trial" because "a prosecution based primarily on false statements, without any basis for establishing their falsity, and in the context of settlement negotiations both with a mediator and then through retained counsel, does not provide notice to a reasonable person that such conduct is unlawful, and must fail as a matter of law." Mot. at 11; *see also* Mot. at 19 (asserting similar argument with respect to Hobbs Act extortion count).

There are several issues with this argument. First, an Indictment need not provide "any basis for establishing the[] falsity of allegedly false statements." The sufficiency of the evidence and whether the Government has met its burden of proof are issues for trial. *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998). On a motion to dismiss, the Court must take the allegations in the indictment as true. *United States v. Weiser*, 23 Cr. 514 (VSB), 2025 WL 2662273, at *2 (S.D.N.Y., Sept. 16, 2025). Second, whether the statutes with which the defendant has been charged "define[d] the criminal offense[s] with sufficient definiteness that ordinary people can understand" is a question that cannot be answered without the finding of facts. *See United States v. Raniere*, 384 F.Supp.3d 282, 320 (E.D.N.Y. 2019) (denying defendant's motion to dismiss sex trafficking count as vague as applied and explaining that the defendant "must wait

24

to bring an as-applied vagueness challenge until the facts have been established by evidence introduced at trial and the fact-finder has had an opportunity to weigh in.").

Second, the Court should reject the defendant's "vague-as-applied" arguments because the *mens rea* requirements of the wire fraud and Hobbs Act extortion charges counter her claims regarding vagueness and fair notice. The Second Circuit has explained that a statute's *mens rea* requirement is nearly dispositive in countering possible arguments of "surprised innocence," strongly "bearing on an analysis of vagueness." *United States v. MacKenzie*, 777 F.2d 811, 816 (2d Cir. 1985); *see also United States v. Roberts*, 363 F.3d 118, 123 (2d Cir. 2004) ("Because the statute at issue here contains a scienter requirement, . . . the defendants' vagueness challenge must be met with some measure of skepticism, at least with regard to the 'fair notice' prong."). As the *Roberts* panel explained, "[A] scienter requirement [in a criminal statute] may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Id.* (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 499 (1982)). Any vagueness analysis must be "limited to acts that are done" with the requisite *mens rea*. *United States v. McElroy*, 910 F.2d 1016, 1021 (2d Cir. 1990); *see also United States v. Rybicki*, 354 F.3d 124, 132 (2d Cir. 2003) (en banc) (analyzing for vagueness "conduct of the type in which the defendants engaged with the specific intent to defraud"). Accordingly, a defendant who acts with a knowing intent to defraud is almost certainly on "reasonably adequate" notice that her actions may violate the fraud statute, regardless of the precise factual means used to carry out a scheme. *See, e.g.*, *Strauss*, 999 F.2d at 698 (rejecting vagueness claim "because the terms 'intent to defraud and mislead' . . . are commonly used words with definite meanings" in fraud case where defendants argued that "no regulatory standards or existing objective criteria" governed the misbranding of dog food).

25

The defendant's argument that the rule of lenity warrants the dismissal of the Hobbs Act extortion charged in Count Two of the Indictment is similarly unavailing. *See* Mot. at 13, 18, 20. The rule of lenity counsels courts "to favor a more lenient interpretation of a criminal statute when, after consulting traditional canon of statutory construction, [they] are left with an ambiguous statute." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 16 (2011). It "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *United States v. Lanier*, 520 U.S. 259, 266 (1997). However, "[t]he rule of lenity is triggered only in the face of grievous ambiguity," *United States v. Davis*, 588 U.S. 445, 497 (2019), and "only applies . . . after considering text, structure, history, and purpose . . . of the statute." *Barber v. Thomas*, 130 S.Ct. 2499, 2501 (U.S., 2010). The Second Circuit has explained that courts should apply the rule of lenity as a "last resort." *United States v. Venturella*, 391 F.3d 120, 133 (2d Cir. 2004). This case presents neither a statutory ambiguity—and certainly not a "grievous" one—nor a lack of notice or warning to the defendant. The Hobbs Act defines "extortion" as "the obtaining from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." Title 18, United States Code, Section 1951(b)(2). The plain meaning of a defined term in the statute—the first step in statutory analysis—"provides fair warning concerning conduct rendered illegal," *Liparota v. United States*, 471 U.S. 419, 427 (1985). Therefore, no grievous ambiguity exists, and the rule of lenity is not triggered. *Davis*, 588 U.S. at 497.

For the foregoing reasons, the Court should reject the defendant's motion to dismiss Counts One through Three on vagueness grounds.

### iii.    The Defendant's Selective Prosecution Argument Fails

The defendant argues that the Government has selectively prosecuted her in violation of her Due Process rights as guaranteed under the Fifth Amendment. Mot. at 26.  Specifically, she claims that because she was indicted, and Attorney-1 was not, her prosecution is unconstitutional. Mot. at 21-22.  She contends that the Indictment[6] must be dismissed on these grounds, or, in the alternative, she asks for discovery pertaining to her claims of selective prosecution.  This argument is meritless.

"A defendant seeking the dismissal of charges based on allegations of selective prosecution bears a heavy burden, given the breadth of prosecutorial discretion and the presumption of regularity that attaches to the exercise of that discretion." *United States v. Ephron*, 24 Cr. 418 (MMG), 2025 WL 524027 at *4 (S.D.N.Y. Feb. 18, 2025) (MMG) (citing *United States v. Armstrong*, 517 U.S. 456, 463-64 (1996).  To support a defense of selective prosecution, a defendant must make a prima facie showing both "(1) that, while others similarly situated have not generally been proceeded against because of the conduct of the type forming the basis of the charge against [the defendant], he has been singled out for prosecution, and (2) that the government's discriminatory selection of [the defendant] for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992).

With respect to the first element, the fact that the defendant's lawyer has not been charged does not demonstrate that the Government has singled her out for prosecution.  "In the ordinary

---

[6] The defendant argues that the entire Indictment must be dismissed due to improper selective prosecution, but there is no allegation that Attorney-1 is at all involved in the defendant's concealment of evidence, as charged in Count Four.

case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his [or her] discretion.'" *United States v. Williams*, 701 F.Supp.3d 257, 265 (S.D.N.Y., 2023) (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)). And "[t]he mere existence of uncharged persons who purportedly engaged in the same criminal conduct as a charged defendant does not violate the due process of the charged defendant." *Ephron*, 2025 WL 524027, at *4. The defendant argues that the Government must explain its charging decision with respect to her lawyer. Mot. at 24. However, the Government is not required, when a defendant alleges selective prosecution, to explain or justify to the charged defendant why others are uncharged. *Ephron*, 2025 WL 524027, at *4. In addition, the defendant does not allege that the purported differential treatment has been motivated by an impermissible consideration, is "invidious or in bad faith," or is "based upon such impermissible considerations as race, religion, or the desire to prevent [her] exercise of constitutional rights." *Fares*, 978 F.2d at 59 (2d Cir. 1992). Accordingly, the Court should deny the defendant's motion to dismiss the Indictment on selective prosecution grounds and the defendant's request for selective-prosecution related discovery.

### iv.    A Bill of Particulars Is Unwarranted

Because there is already ample notice to the defendant of the charged conduct in this case, the defendant's demand for a bill of particulars is baseless. "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *Walsh*, 194 F.3d at 47. A bill of particulars is not appropriate "if the information sought by [the] defendant is provided in the indictment or in some acceptable alternate form." *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998). "A bill of particulars

28

is not a discovery device." *United States v. Mandell*, 710 F. Supp. 2d 368, 384 (S.D.N.Y., 2010). Nor should it be used as a way to restrict the government's evidence prior to trial, or to assist the defendant's investigation. *United States v. Bellomo*, 263 F. Supp. 2d 561, 580 (S.D.N.Y. 2003). The Government is not obligated "to reveal to a defendant all of the evidence it will produce at trial." *United States v. Diaz*, 303 F. Supp. 2d 84, 89 (D. Conn. 2004). Instead, the question is whether the information sought is necessary, not simply whether it is helpful. *Kogan*, 283 F. Supp. 3d at 132. This inquiry must also be informed by "the totality of the information available to the defendant—through the indictment, affirmations, and general pre-trial discovery." *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000). Whether to issue a bill of particulars is committed to the district court's discretion. "So long as the defendant was adequately informed of the charges against him and was not unfairly surprised at trial as a consequence of the denial of the bill of particulars," the trial court will not be found to have abused its discretion in denying a bill of particulars. *Torres*, 901 F. 2d at 234.

The Court should deny the defendant's demand for a bill of particulars for at least three reasons. First, the "totality of the information available to the defendant" counsels against granting her request for a bill of particulars. *Bin Laden*, 92 F. Supp. 2d at 233. The information available to the defendant includes the 10-page Complaint, the Indictment, and approximately 3.88 terabytes of discovery that the Government has made across five Rule 16 productions. The charged conduct is concentrated and specific: it relates to the defendant's fraud, extortion, and blackmail of a single victim, and her obstruction of investigation into that same criminal conduct, all occurring within the course of less than one year.

Second, the defendant's arguments about the volume of discovery are unavailing. The defendant contends that "a bill of particulars is appropriate where, like here, the government has

29

produced voluminous pretrial discovery." Mot. at 27. However, "the mere existence of mountains of documents does not entitle [a defendant] to a bill of particulars," *Mandell*, 710 F. Supp. 2d at 385, and the defendant cannot "use the vastness or complexity of the [charged crime] and its attendant documentary evidence as a sword against the government when the Indictment, discovery, and other information provided by the government adequately notify [the] [d]efendant of the charges against" her. *United States v. Rigas*, 258 F.Supp.2d 299, 305–06 (S.D.N.Y., 2003). In any event, to the extent the "sheer volume of discovery can be a basis for granting a motion for a bill of particulars, that need is obviated if there is sufficient time for the defendant to review the materials and when the Government has produced its discovery in an organized manner. *United States v. Rogas*, 547 F.Supp. 3d 357, 366 (S.D.N.Y. 2021). Here, the Government completed producing Rule 16 discovery currently in the Government's possession in early December of 2025. Trial is set in this matter for September 14, 2026. The defendant has over nine months to review the evidence before trial. In addition, the Government's discovery productions were organized and easy to navigate. Each production included a cover letter with an index describing the contents and associated Bates ranges. Moreover, much of the discovery comes from images of the defendant's own electronic devices that were produced in a processed format that is text-searchable, and of which only a far smaller quantity of data is actually pertinent to the charges. That data was identified by the Government for the defendant, in response to its execution of applicable search warrants.

Third, the Court should deny the defendant's demand for a bill of particulars because of the relatively straightforward nature of this case. The conduct charged in the Indictment covers a time period of roughly seven months. The Indictment charges a single defendant and identifies, by pseudonym, one victim. Judges in this district routinely deny motions for bills of particulars in

30

cases involving more defendants, multiple schemes, numerous victims, and longer periods of criminal conduct. *See, e.g.*, *United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir. 1984) (district court did not abuse its discretion in denying defendant's motion for bill of particulars involving an elaborate three-year insurance fraud scheme implicating numerous defendants because the indictment described the elements of the scheme and because the Government provided extensive discovery); *United States v. Guan*, 24 Cr. 322 (VM), 2026 WL 160995, at *3 (S.D.N.Y., Jan. 21, 2026) (denying defendant's motion for bill of particulars in case alleging that defendant conspired to launder $67 million and discovery produced by the Government referenced roughly 600,000 transactions); *United States v. Hanna,* 198 F.Supp. 2d 236, 249 (E.D.N.Y. 2002) (denying bill of particulars in a case of securities, mail, and wire fraud involving 21 defendants and 119 counts). The relative simplicity of this case combined with the ample disclosure of information to date undercut the defendant's suggestion that she has somehow been left in the dark with respect to the charges against her. The defendant's demand for a bill of particulars is nothing more than an attempt to bind the Government's proof and "pin the Government to particular evidentiary details." *United States v. Akhavan*, S3 20-CR-188, 2020 WL 2555333, at *2 (S.D.N.Y. May 20, 2020) (denying request for list of specific misrepresentations allegedly made in furtherance of a bank fraud conspiracy). The Court should reject that attempt.

The defendant relies on two cases to support her demand for a bill of particulars: *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) and *United States v. Rajaratnam*, 09 Cr. 1184 (RJH), 2010 WL 2788168 at *2 (S.D.N.Y. July 13, 2010). Neither is persuasive. In *Rajaratnam*, the court ordered a bill of particulars in the context of a complex insider trading conspiracy case involving 31 stocks and dozens of co-conspirators. In *Bortnovsky*, a case concerning the defendant's submission of insurance claims and false documents to collect on what were "phony

burglaries," the Government produced documents and materials related to several burglaries that it did not contend were fabricated and introduced discovery of the non-fabricated burglaries at trial. 820 F.2d at 573-74. Following their conviction, the defendants appealed, and the Second Circuit held that the district court abused its discretion by denying the defendants' request for a bill of particulars specifying which documents were alleged to be forged and which burglaries were alleged to be fabricated. 820 F.2d 572 (2d Cir. 1987). Notwithstanding *Bortnovsky*, district courts in this Circuit routinely deny motions for bills of particulars where, as here, the totality of the information available to the defendant indicates that she will not be surprised at trial. *See, e.g.*, *United States v. Reinhold*, 994 F.Supp. 194, 201 (S.D.N.Y.,1998) (denying defense motion for bill of particulars in which defendant cited *Bortnovsky* because the "Government provided a detailed indictment and extensive discovery); *United States v. Jabali*, 1 Cr. 801 (SJ), 2003 WL 22170595, at *3 (E.D.N.Y., Sept. 12, 2003) (denying defendant's motion for bill of particulars where defendant relied on *Bortnovsky* because the "defendant was provided with an indictment that is sufficiently specific . . . [and] [r]equests for exact dates, places, and times in which events occurred and the respective roles and manner of participation of others in such events ignore the proper scope and function of a bill of particulars."); *United States v. Walsh*, 156 F.Supp.3d 374, 396 (E.D.N.Y., 2016) (denying defendant's motion for bill of particulars where defendant relied on *Bortnovsky* because the "Indictment alleges the relevant time period . . . and the complaint provides specific examples of the Defendant's alleged conduct."). "[A] bill of particulars should not be ordered to force the Government to 'particularize all of its evidence." *United States v. Kostin*, 24 Cr. 91 (GHW), 2025 WL 1504409, at *32 (S.D.N.Y. May 27, 2025) (internal citations omitted). That is the motivation behind the defendant's request, and it would be

the outcome if the Court grants it. Accordingly, the Court should deny the defendant's motion for a bill of particulars.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny the Motion in its entirety.

Dated:  New York, New York
        March 20, 2026

<div style="margin-left: 50%;">

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:    *Brandon C. Thompson*
        Brandon C. Thompson
        Ni Qian
        Assistant United States Attorneys
        (212) 637-2444/2364

</div>

33